UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **COALITION FOR CLEAN AIR, a California nonprofit corporation; CENTER FOR ENVIRONMENTAL HEALTH, a California nonprofit Corporation; ASSOCIATION OF IRRITATED RESIDENTS, a California nonprofit organization; TEAMSTERS JOINT COUNSEL 7, an organized labor union; KEVIN LONG, an individual,**<br><br>　　　　**Plaintiffs,**<br><br>　　v.<br><br>**VWR INTERNATIONAL, LLC, a Delaware corporation; and DOES 1-X, inclusive,**<br><br>　　　　**Defendants.** | **1:12-CV-01569-LJO-BAM**<br><br>**ORDER DENYING PLAINTIFFS' REQUEST FOR PRELIMINARY INJUNCTION (DOC. 6).** |

## I. INTRODUCTION

　　This case arises under the citizen suit provision of the Clean Air Act ("CAA"), 42 U.S.C. § 7604(a). Plaintiffs, a coalition of environmental and labor interests, allege that Defendant VWR International, LLC, ("VWR"), a laboratory supply distributor, violated San Joaquin Valley Air Pollution Control District ("District") Rule 9510, implemented and approved as part of California's State Implementation Plan ("SIP") under the CAA, by failing to apply for an Indirect Source Review ("ISR") permit prior to obtaining approval to open and/or operate a trucking distribution facility in Visalia, California. Before the Court for decision is Plaintiffs' request for a preliminary injunction staying all further construction and operation activities at the Visalia facility. Doc. 6.

　　Plaintiffs filed their preliminary injunction request on September 28, 2012, noticing a hearing for October 29, 2012. *Id*. Thereafter, the parties stipulated to continue the hearing date to November 13,

2012. Doc. 9. Defendants filed an opposition on October 25, 2012, Doc. 10, to which Plaintiffs replied on November 6, 2012, Doc. 14. One day later, Defendants filed a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), setting that motion for hearing on December 10, 2012. Doc. 17. Finding the harms alleged in the request for injunctive relief not to be of such urgency that the request could not be addressed alongside the motion to dismiss, and finding the need for additional briefing on the presence of irreparable harm, the Court consolidated the briefing schedules on the pending motions. Doc. 18. The parties then stipulated to move the hearing date on both motions to December 20, 2012, Doc. 22, filed supplemental briefs regarding irreparable harm, Docs. 24 & 26, and completed briefing on the motion to dismiss. Upon preliminary review of the parties' filings, the hearing was vacated to permit time for the Court to thoroughly review the voluminous materials. Doc. 30. Having reviewed those filings, and in light of the entire record, the Court is now prepared to rule on Plaintiffs' request for preliminary injunction. The Court does not believe oral argument is necessary to aid resolution of this request, and hereby rules on the papers pursuant to Local Rule 230(g).

## II. DISCUSSION

**A.      Standard of Decision**

Injunctive relief is an "extraordinary remedy, never awarded as of right." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). As such, a court may grant such relief only "upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22. To prevail, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood that the moving party will suffer irreparable harm absent preliminary injunctive relief; (3) that the balance of equities tips in the moving party's favor; and (4) that preliminary injunctive relief is in the public interest. *Id.* at 20. In considering the four factors, the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* at 24.

2

B.   **Rule 9510.**

District Rule 9510, which "is designed to achieve reductions in air pollution attributable to development projects," is familiar to this Court. *Nat'l Ass'n of Home Builders v. San Joaquin Valley Unified Air Pollution Control Dist.*, 2008 WL 4330449, *4 (E.D. Cal. Sept. 19, 2008) aff'd, 627 F.3d 730 (9th Cir. 2010).

> When Rule 9510 was adopted, the San Joaquin Valley was classified as nonattainment under federal and state standards for PM10, PM2.5 and ozone. PM10 and PM2.5 can be directly-emitted geologic material, including entrained road and other dust. PM10 and PM2.5 can [also be formed when precursor emissions, such as oxides of Nitrogen ("NOx") and volatile organic compounds ("VOCs") are emitted as a gas and form PM10 and PM2.5 through chemical processes. [N]ew residential and commercial development indirectly causes air pollution by attracting mobile sources and contributing increased energy use.
>
> [] Rule 9510 targets indirect sources of air pollution.... [by] set[ting] target reductions for emissions associated with construction ("construction emissions") and future operation of development projects ("operational emissions"). For construction, Rule 9510's target is to reduce PM10 emissions by 45 percent and NOx by 20 percent as compared to emissions generated using "average" construction equipment in California. For future operation, Rule 9510's target is to incorporate mitigation measures into project design to reduce emissions that would be otherwise indirectly caused by the project (e.g., increased traffic) over a 10-year period. The PM 10 target is to reduce unmitigated operational emissions by 50 percent. The NOx target is to reduce emissions by 33.3 percent.
>
> [U]nder Rule 9510, a computer model is used to calculate emissions attributable to "construction" and "operational" phases of a development project, and the project developer is responsible to mitigate a portion of those emissions. The District notes that under Rule 9510, mitigation may be achieved: (1) "on-site" by incorporating design features and other pollution mitigation measures into the project; (2) "off-site" by paying a mitigation fee which the District uses to "buy" requisite amount of emissions reductions through its emissions reduction incentive program ("ERIP"); or (3) by a combination of "on-site" and "off-site" measures.

*Id.* at *5.

C.   **Irreparable Harm.**

"Preliminary injunctive relief is available only if plaintiffs 'demonstrate that irreparable injury is likely in the absence of an injunction.' " *Johnson v. Couturier*, 572 F.3d 1067, 1081 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 22) (noting that *Winter* rejected the Ninth Circuit's "possibility of

3

irreparable harm" test). "[T]o demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the only way of protecting the plaintiff from harm." *Campbell Soup Co. v. ConAgra, Inc.,* 977 F.2d 86, 91 (3rd Cir. 1992).

Plaintiffs allege that they will be harmed irreparably if a preliminary injunction does not issue because VWR's violations of Rule 9510 "are forcing Plaintiffs' members to breathe air that is more polluted than allowed by the [CAA]." Doc. 24 at 5. It is well established that the San Joaquin valley has the worst fine particulate matter pollution in the United States, 75 Fed. Reg. 74,518, 74,519 (Nov. 30, 2010), and one of the worst ozone pollution problems, 76 Fed. Reg. 57,846, 57,847 (Sept. 16, 2011). It is also undisputed that an individual suffers injury for purposes of standing "if compelled to breathe air less pure than mandated by the Clean Air Act." *Natural Res. Def. Council v. EPA*, 507 F.2d 905, 910 (9th Cir. 1974). But, this does not necessarily mean that Plaintiffs have suffered irreparable injury under the applicable regulatory scheme sufficient to warrant preliminary injunctive relief.

The "mitigate or pay" nature of Rule 9510 raises novel issues regarding the presence of irreparable harm. An applicant/facility covered by Rule 9510 is required to make certain emissions reductions for both the construction and operational phases of a project. Rule 9510 § 6.0. However, the reductions may be achieved "through any combination of on-site emissions reduction measures or off-site fees." *Id*. at § 6.3. If the applicant chooses to pay the off-site fee, the fee is calculated according to formulae set forth in the rule. *Id*. at § 7.1

Any fees due shall be paid within sixty (60) calendar days after the application is approved or in accordance with a Fee Deferral Schedule ("FDS"). *Id*. at 7.3. If the applicant's total off-site fee exceeds $50,000, the applicant may propose a FDS for the balance of the fee that exceeds $50,000. *Id*. at § 5.5. In any event, all fees must be paid prior to the issuance of any building permits. *Id*. § 3.25. The FDS must be set up in a manner that provides "assurance that reductions from off-site emissions reductions

project can be obtained reasonably contemporaneous with emissions increases associated with the project...." *Id*. § 5.5.

Plaintiffs point to the requirement that FDS be designed to ensure "reasonably contemporaneous" emissions reductions as evidence that requiring VWR to apply for an ISR permit would remedy any increased pollution to which Plaintiffs would be exposed as a result of VWR's operations. Yet, this ignores the total lack of specificity in the Rule regarding what actually happens once the fee is paid to the District. Rule 9510 provides that the District "shall" use any off-site fees to "fund quantifiable and enforceable off-site projects that reduce surplus emissions of NOx and PM10 in an expeditions manner...." *Id*. at § 10.2. The Rule does contain some specific requirements regarding the expenditure of funds by the District. For example, the District "shall enter into a binding contract with the applicant of the off-site project, which will, at a minimum require an annual report from the applicant that includes information necessary to ensure that emissions reductions are actually occurring." *Id*. at § 10.2.4.[1] However, term "expeditious" is nowhere defined in the Rule.

In approving Rule 9510 as part of the SIP, EPA discussed a closely related concern:

> If Rule 9510 was incorporated into the SIP, EPA could use the Act's enforcement authority to require that the appropriate fees be collected from a project developer, and that the collected fees be used by the SJVUAPCD to seek off-site emissions reductions. However, the issue of federal enforceability arises because EPA may not be able to enforce the terms of a contract between the SJVUAPCD and an off-site project applicant, and thus the emissions reductions required by that contract, pursuant to its enforcement authority under the Act. Thus the issue is not EPA's ability to enforce the provisions of Rule 9510 as they are written, but whether those provisions create adequate legal authority for EPA to require emissions reductions which are sought or claimed by the

---

[1] VWR has submitted numerous documents for consideration by way of judicial notice. For example, VWR requests judicial notice of a Staff Report submitted as part of the District's application to the EPA to approve Rule 9510, which states that off-site fee "funds will be managed by a grant-like program and allocation as applications are received [from potential emission-reduction projects]." Doc. 27, Ex. 5, Att. 2, at 15. VWR also submits the District's 2010 Annual Report, which indicates that the District holds a large unexpended balance in its off-site fee fund. *Id.*, Ex. 4, at 1. But, VWR misunderstands the purpose and scope of judicial notice. While the court may take judicial notice of the certain types of documents, those documents are judicially noticeable "only for the purpose of determining what statements are contained therein, not to prove the truth of the contents or any party's assertion of what the contents mean." *United States v. S. Cal. Edison Co.*, 300 F. Supp. 2d 964, 975 (E.D. Cal. 2004). VWR does not propose any other basis for consideration of these documents. They will not be considered for the truth of their content.

> rule. In view of these enforceability concerns, among other issues, the TSD recommends approving Rule 9510 into the SIP, but also recommends that "reductions from the Rule should not be credited in any attainment and rate of progress/reasonable further progress demonstrations or used to meet contingency measure requirements until the District corrects the identified problems, which we believe the District should easily be able to do." In today's final rule we therefore approve Rule 9510 <u>but we do not assign any emissions reduction credit to the rule for purposes of any attainment or progress demonstration in any area</u>.

76 Fed. Reg. 26,609-01, 26,613 (May 9, 2011) (emphasis added). Despite the above language, Plaintiffs maintain that EPA "recognized that emission reductions would, in fact, result from Rule 9510 implementation, even if EPA could not enforce the reductions as to third parties," Doc. 24 at 4, but they cite no authority for this proposition. The language of the Federal Register notice suggests that the EPA is far from sure about the nature of emissions reductions that will result from Rule 9510's fee program, let alone the timing of any such reductions.

Plaintiffs bear the burden of demonstrating that unless a preliminary injunction issues, they will suffer irreparable harm that cannot be redressed by a legal or an equitable remedy following a trial. In the context of this case, this requires an affirmative showing that halting VWR's operations until they apply for and obtain an ISR permit under Rule 9510 will avoid exposing Plaintiffs to increased levels of pollution. In light of Rule 9510's "mitigate or pay" structure, Plaintiffs have failed to demonstrate that, if the requested preliminary injunction issues and the Rule 9510 ISR permit process requires emissions reductions of VWR, those reductions would likely take place before this case could be resolved on the merits. Plaintiffs have therefore failed to present "clear showing" of entitlement to the extraordinary remedy of preliminary injunctive relief.

Accordingly, Plaintiffs request for a preliminary injunction is DENIED.

IT IS SO ORDERED.

Dated:   **January 8, 2013**                              **/s/ Lawrence J. O'Neill**
                                                              UNITED STATES DISTRICT JUDGE